**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO: 26-cv-3497**

C.D., a minor, by and through her parents
and natural guardians, JAMIE DAVIS and
MICHAEL DAVIS,
JAMIE DAVIS, individually, and
MICHAEL DAVIS, individually,

Plaintiffs,

v.

AMAZON.COM, INC.,
AMAZON.COM SERVICES, LLC,
LING JUNWEN, d/b/a BACOFLO and d/b/a BRIAN & DANY,
FURMIA, LLC d/b/a HOUSWISE,

Defendants.
_________________________________/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, by and through their undersigned Counsel, hereby sue the Defendants, AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, LING JUNWEN, d/b/a BACOFLO and d/b/a BRIAN & DANY, and FURMIA, LLC d/b/a HOUSWISE, and in support thereof allege as follows:

**PARTIES AND JURISDICTION**

1. At all times material hereto, the Plaintiff, C.D., was and is a citizen of the State of Florida, domiciled in Pinellas County, Florida, and is a minor who was nine (9) years old at the time of the Subject Incident.

2. At all times material hereto, the Plaintiff, JAMIE DAVIS, was and is a citizen of the State of Florida, domiciled in Pinellas County, Florida, and is otherwise *sui juris*.

3. At all times material hereto, the Plaintiff, MICHAEL DAVIS, was and is a citizen of the State of Florida, domiciled in Pinellas County, Florida, and is otherwise *sui juris*.

4. At all times material hereto, the Plaintiffs, JAMIE DAVIS and MICHAEL DAVIS, were and are the natural parents and legal guardians of the minor Plaintiff, C.D., and bring this action on her behalf and in their own individual capacities.

5. At all times material hereto, the Defendant AMAZON.COM, INC., hereinafter referred to as "AMZ," is a Delaware corporation with its principal place of business in Seattle, Washington, and may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

6. At all times material hereto, the Defendant, AMZ is registered to do business in the State of Florida, is doing business in the State of Florida, and is engaged in the business of selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, tabletop fire pits, including the BRIAN & DANY Tabletop Fire Pit at issue, hereinafter referred to as the "Subject Fire Pit."

7. At all times material hereto, the Defendant AMAZON.COM SERVICES LLC, hereinafter referred to as "AMZS," is a Delaware limited liability company with its principal place of business in Seattle, Washington, and has a registered agent at Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

8. At all times material hereto, the sole member of Defendant, AMAZON.COM SERVICES LLC is Amazon.com Sales, Inc., which is a citizen of Delaware, its place of incorporation, and Washington, its principal place of business.

9. At all times material hereto, the Defendant, AMZS, is registered to do business in the State of Florida, is doing business in the State of Florida, and is engaged in the business of selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, tabletop fire pits, including the Subject Fire Pit.

10. At all times material hereto, the Defendant, LING JUNWEN, d/b/a BACOFLO and d/b/a BRIAN & DANY, hereinafter referred to as "BRIAN & DANY," was and is a citizen of the People's Republic of China, domiciled in the People's Republic of China, with his residence and principal place of business located at the address of Room 105, Building 36, Nanya Garden, Chengyang Road, Xiangcheng District, Suzhou City, Jiangsu Province, 215131, People's Republic of China. The Defendant, LING JUNWEN, is not a citizen of the United States.

11. At all times material hereto, the Defendant, LING JUNWEN, was a registered seller on Amazon.com under the seller name "BacoFlo." Under the "Integrity, Notification, and Fairness in Online Retail Marketplaces for Consumers Act," Amazon is required to verify the correct identity of this seller. On BacoFlo's Amazon.com seller profile, BacoFlo's detailed seller information is listed as: "**Business Name:** LING JUNWEN; **Business Address:** 相城区澄阳路南亚花园 36栋105室, 苏州市, 江苏省, 215131, CN." The Subject Fire Pit was sold under the BRIAN & DANY brand by LING JUNWEN, d/b/a BacoFlo, through Amazon.com.

12. At all times material hereto, the Defendant, LING JUNWEN, is a foreign individual who was authorized and operating his business in the State of Florida and/or has an agent or other representative in Florida. This Defendant is engaged in the solicitation or service activities within the State of Florida, which resulted in the injuries to the Plaintiffs described herein. This Defendant's products, materials and items which he processed or serviced are within this state in

the ordinary course of commerce, trade or use, and that use or consumption has resulted in the injuries to the Plaintiffs described herein.

13. At all times material hereto, the Defendant, BRIAN & DANY, designs, manufactures, sells, and/or distributes tabletop firepit, including the Subject Fire Pit, which was sold by the Amazon Defendants to the Plaintiffs.

14. At all times material hereto, the Defendant, FURMIA, LLC d/b/a HOUSWISE, hereinafter referred to as "HOUSWISE," is a Wyoming limited liability company with its principal place of business located at 144-42 Jewel Avenue, Flushing, New York 11367.

15. At all times material hereto, the sole member of Defendant, FURMIA, LLC is Janus Associates, Inc., which is a citizen of New York, its place of incorporation and its principal place of business. The Defendant, HOUSWISE, is not a citizen of the State of Florida.

16. At all times material hereto, the Defendant, HOUSWISE, designs, manufactures, markets, imports, distributes, and/or sells bioethanol fuel products under the brand name HOUSWISE, including Houswise Bio Ethanol Fireplace Fuel, 3 x 1 Liter, hereinafter referred to as the "Subject Fuel," which was sold by the Amazon Defendants to the Plaintiffs, and is engaged in the business of selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, bioethanol fuel products throughout the United States, including the State of Florida.

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interests.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) by virtue of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this

District, including the Subject Incident, which occurred in Pinellas County, Florida, within the Tampa Division, and (b) Defendants' products are produced, sold to, and consumed by individuals in the State of Florida, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District under 28 U.S.C. § 1391(d).

19. This court has personal jurisdiction over these Defendants based on the following in-state conduct: a. Transacting business in Florida by processing a consumer transaction with Plaintiffs; b. Contracting to ship products to Florida by processing a consumer transaction with BRIAN & DANY and shipping products to Plaintiffs in Florida; c. The distribution of goods to Florida with the knowledge and reasonable expectation that those goods would be used in Florida. d. Conducting substantial business in Florida; e. the Defendants purposely and intentionally conduct business in the State of Florida.

## FACTUAL ALLEGATIONS

20. At all times material hereto, the Defendant, BRIAN & DANY, designs, manufactures, sells, and/or distributes tabletop firepit, including the Subject Fire Pit.

21. At all times material hereto, the Defendants, AMZ and/or AMZS market, sell, process, warehouse, distribute, and/or ship BRIAN & DANY products, including the Subject Fire Pit.

22. At all times material hereto, the Defendants, AMZ and/or AMZS market, sell, process, warehouse, distribute, and/or ship HOUSWISE products, including the Subject Fuel.

23. At all times material hereto, the Defendants, AMZ and/or AMZS provide an online marketplace through which the Defendant, BRIAN & DANY sells its products to consumers in the United States.

24. At all times material hereto, the Defendants, AMZ and/or AMZS provide an online marketplace through which the Defendant, HOUSWISE sells its products to consumers in the United States.

25. To the consumer, like the Plaintiffs, the Defendants, AMZ and/or AMZS are a critical part of the transaction by serving as the sole means of marketing, communications, distributions, returns or customers service contact.

26. At all times material hereto, the Defendant, BRIAN & DANY and Defendants, AMZ and/or AMZS operate under the Amazon Services Business Solution Agreement ("BSA").

27. At all times material hereto, the Defendant, HOUSWISE and Defendants, AMZ and/or AMZS operate under the BSA.

28. BRIAN & DANY, under the terms of its BSA, participated in Amazon's Fulfillment by Amazon program as well as its "Selling Partner" Application Programming Interface.

29. HOUSWISE, under the terms of its BSA, participated in Amazon's Fulfillment by Amazon program as well as its "Selling Partner" Application Programming Interface.

30. Through the BSA, Defendants, AMZ and/or AMZS require Defendant, BRIAN & DANY to price goods sold on Amazon.com to be at least as favorable to Amazon site users as the most favorable terms offered by BRIAN & DANY elsewhere.

31. Through the BSA, Defendants, AMZ and/or AMZS require Defendant, HOUSWISE to price goods sold on Amazon.com to be at least as favorable to Amazon site users as the most favorable terms offered by HOUSWISE elsewhere.

32. Amazon operates the e-commerce website Amazon.com.

33. Amazon sells and distributes consumer products on Amazon.com both as a retailer and as a distributor for Amazon affiliates and its selling partners under its Fulfillment by Amazon ("FBA") program.

34. Amazon's "Selling Partners" who participate in FBA deliver their products to Amazon's fulfillment centers rather than directly to consumers.

35. Amazon refers to these fulfillment centers as its "distribution centers." *See In the Matter of Amazon.com, Inc.*, (Dec. 14, 2023) (CPSC Dkt. No. 21-2).

36. Once Amazon receives delivery of a product into its fulfillment center, Amazon stores the product until it is sold to a consumer.

37. If a particular product is not being held in an Amazon distribution center, Amazon does not allow that product to be purchased on Amazon.com.

38. Amazon uses its own technology to track, move, commingle, and ship FBA products to customers.

39. When a consumer orders an FBA product, Amazon locates the product in its warehouse, fulfills the order, and arranges shipment directly to the consumer.

40. Amazon processes all customer payments for FBA products, deducts its fees, and remits balances to sellers.

41. Amazon issues receipts, order confirmations, and purchase acknowledgments in its own name for FBA transactions.

42. Amazon applies and enforces its Fair Pricing Policy to the prices set by third-party sellers, including the power to penalize or suspend sellers.

43. Amazon requires third-party sellers to agree that Amazon alone will provide customer service for FBA products.

44. Amazon determines whether a customer will receive a refund, replacement, or adjustment for an FBA product.

45. Amazon requires sellers to reimburse Amazon for refunds, replacements, and adjustments Amazon provides to consumers in Amazon's sole discretion.

46. Amazon enforces reimbursement by reversing credits owed to sellers or charging the seller's credit card or bank account.

47. If a customer returns a product, Amazon decides whether to dispose of the product, return it to seller inventory, or resell it through its Amazon Warehouse program.

48. Amazon contractually reserves the right to destroy, recycle, donate, or liquidate inventory stored in its fulfillment centers.

49. When Amazon disposes of inventory, title to the product transfers to Amazon or its designee, and Amazon may retain proceeds from disposal.

50. Amazon retains constructive title to products stored in its fulfillment centers through its contractual power to withhold distribution, seize, resell, or destroy inventory.

51. Amazon requires third-party sellers to notify Amazon of any recalls or potential recalls and to cooperate with Amazon in executing recalls.

52. Amazon requires its selling partners to reimburse Amazon for all costs Amazon incurs in connection with recalls or safety alerts.

53. Amazon alone possesses the contact information of consumers who purchase FBA products and therefore controls recall notifications.

54. Consumers perceive they are purchasing FBA products from Amazon because Amazon controls the website, checkout process, packaging, and customer communications.

55. Many FBA sellers are foreign entities that are unknown to consumers and Amazon is the only visible participant in the seller / distribution chain.

56. Amazon profits from every FBA transaction through referral fees, fulfillment fees, and other charges.

57. Amazon is in the best position to monitor and regulate the safety of the products it sells and distributes because of its centralized control over listing, storage, fulfillment, pricing, payment, customer service, returns, and recalls.

58. Amazon's FBA participation agreement is an adhesion contract that unilaterally imposes these terms on sellers without negotiation including those that self-servingly relate to title.

59. At all times material hereto, Defendants, AMZ and/or AMZS provide processing for all goods sold by BRIAN & DANY including the Subject Fire Pit.

60. At all times material hereto, Defendants, AMZ and/or AMZS provide processing for all goods sold by HOUSWISE including the Subject Fuel.

61. At all times material hereto, Defendants AMZ and/or AMZS, charge service fees for their role in the transaction including for facilitating the shipment of the Subject Fire Pit at issue.

62. At all times material hereto, Defendants AMZ and/or AMZS, charge service fees for their role in the transaction including for facilitating the shipment of the Subject Fuel at issue.

63. At all times material hereto, Defendants, AMZ and/or AMZS, charged BRIAN & DANY a service fee for the sale of the Subject Fire Pit to the Plaintiff.

64. At all times material hereto, Defendants, AMZ and/or AMZS, charged HOUSWISE a service fee for the sale of the Subject Fuel to the Plaintiff.

65. At all times material hereto, Defendants, AMZ and/or AMZS also charge referral fees – a percentage of the sale price per item sold by Defendant, BRIAN & DANY.

66. At all times material hereto, Defendants, AMZ and/or AMZS also charge referral fees – a percentage of the sale price per item sold by Defendant, HOUSWISE.

67. At all times material hereto, Defendants, AMZ and/or AMZS charged BRIAN & DANY a referral fee for the sale of the Subject Fire Pit to the Plaintiff, JAMIE DAVIS.

68. At all times material hereto, Defendants, AMZ and/or AMZS charged HOUSWISE a referral fee for the sale of the Subject Fuel to the Plaintiff, JAMIE DAVIS.

69. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require all communications between BRIAN & DANY and purchasers of BRIAN & DANY products be routed through Amazon.

70. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require all communications between HOUSWISE and purchasers of HOUSWISE products be routed through Amazon.

71. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS reserve the right to control in their sole discretion the content, appearance, design, functionality and all other aspects of the product pages for BRIAN & DANY products.

72. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS reserve the right to control in their sole discretion the content, appearance, design, functionality and all other aspects of the product pages for HOUSWISE products.

73. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require BRIAN & DANY to maintain liability insurance naming Amazon as an additional insured.

74. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require HOUSWISE to maintain liability insurance naming Amazon as an additional insured.

75. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require BRIAN & DANY to indemnify them for any liability arising from products sold through Amazon.com.

76. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require HOUSWISE to indemnify them for any liability arising from products sold through Amazon.com.

77. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require BRIAN & DANY to ensure and certify that its products comply with applicable laws and notify AMZ and/or AMZS of any public or private recall of their products.

78. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS require HOUSWISE to ensure and certify that its products comply with applicable laws and notify AMZ and/or AMZS of any public or private recall of their products.

79. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS have the power to require BRIAN & DANY to provide AMZ and/or AMZS with any product certification or product standards certification applicable to BRIAN & DANY's products.

80. At all times material hereto, under the BSA, Defendants, AMZ and/or AMZS have the power to require HOUSWISE to provide AMZ and/or AMZS with any product certification or product standards certification applicable to HOUSWISE's products.

81. At all times material hereto, Defendants, AMZ and/or AMZS independently monitor safety recalls and other safety issues related to products sold on their online marketplace.

82. On February 3, 2024, the Plaintiff, JAMIE DAVIS, purchased two BRIAN & DANY Tabletop Fire Pits, including the Subject Fire Pit, from the Amazon Defendants under Order #: 112-5492784-3600238.

83. In the same order, on February 3, 2024, the Plaintiff, JAMIE DAVIS, also purchased the Subject Fuel from the Amazon Defendants, which was marketed on Amazon.com as "Bioethanol Fuel Tabletop Fire Pit, Bio Ethanol for Table Top Fire Pit & Fireplaces." The Subject Fuel was designed, manufactured, marketed, distributed, and/or sold by the Defendant, HOUSWISE, under the HOUSWISE brand name. The Subject Fuel was the fuel used with the Subject Fire Pit on November 29, 2024.

84. The Subject Fuel was specifically marketed and sold for use with tabletop fire pits, including the Subject Fire Pit. Its Amazon.com product listing described it as "Bioethanol Fuel Tabletop Fire Pit" and "Bio Ethanol for Table Top Fire Pit & Fireplaces," and its bottle was labeled "Premium Fireplace Fuel," "For Indoor & Outdoor Use," and "Patented Safety Pour Bottle."

85. Defendants, AMZ and/or AMZS then notified BRIAN & DANY of the order and required BRIAN & DANY to provide shipping information for the product.

86. Defendants, AMZ and/or AMZS then notified HOUSWISE of the order and required HOUSWISE to provide shipping information for the product.

87. The Plaintiff, JAMIE DAVIS, received confirmation and shipping emails from Defendants, AMZ and/or AMZS regarding the transaction.

88. The Subject Fire Pit was in the possession of Amazon at one of its fulfilment centers and was delivered to Plaintiff, JAMIE DAVIS, by Amazon in Amazon packaging.

89. The Subject Fuel was in the possession of Amazon at one of its fulfilment centers and was delivered to Plaintiff, JAMIE DAVIS, by Amazon in Amazon packaging.

90. Thereafter, the Subject Fire Pit and the Subject Fuel were delivered to the Plaintiffs' home located at 10090 Bayou Grande Ave., Seminole, Florida 33772.

91. At all times material hereto, unbeknownst to the Plaintiffs, the Subject Fire Pit poses a risk of serious fire and burn injuries, including death, due to flame jetting associated with the use of certain pourable fuels.

92. In providing the Subject Fire Pit, Defendants, BRIAN & DANY, AMZ and/or AMZS were aware or should have been aware of the risks the Subject Fire Pit posed.

93. The Defendants, BRIAN & DANY, AMZ and/or AMZS, knew and/or should have known of other recalls of similar fire pits such as those manufactured by Colsen, which were sold on Amazon and were recalled on October 17, 2024, prior to the Subject Incident, due to the risk of serious burn injury from flame jetting.

94. After the purchase of the Subject Fire Pit, the Defendants, AMZ and/or AMZS should have identified and emailed all purchasers of BRIAN & DANY tabletop fire pits, including the Plaintiff, JAMIE DAVIS, to warn them of dangers associated with the product and to urge them to stop using it immediately.

95. On November 29, 2024, the Plaintiffs, JAMIE DAVIS, MICHAEL DAVIS, and C.D., were using the Subject Fire Pit on the balcony of their home.

96. On November 29, 2024, the Plaintiffs used the Subject Fire Pit in a foreseeable manner.

97. On November 29, 2024, the Plaintiff, MICHAEL DAVIS, poured a small amount of the Subject Fuel into the Subject Fire Pit, which contains a white wick that absorbs the liquid fuel, and the fuel was ignited. Shortly after, the fire/flames appeared to go out and there was no visible flame. Sometime thereafter, the Plaintiff, MICHAEL DAVIS, began pouring additional

Subject Fuel into the Subject Fire Pit. Suddenly and without warning, the fuel ignited and the flame travelled toward the bottle of Subject Fuel from which he was pouring, resulting in flame jetting and spreading all over. The burning fuel engulfed the minor Plaintiff, C.D., in flames, and caused substantial damage to the Plaintiffs' home.

98. As a direct and proximate result, the minor Plaintiff, C.D., suffered catastrophic burns to her face, shoulder, and legs. C.D.

99. The Subject Fire Pit sold by Defendants was defective and unsafe for foreseeable purposes at the time it left the control of the Defendants in that the Subject Fire Pit was not sold with a fuel container containing a flame arrestor, a necessary safety device that would have prevented the ignition of the liquid fuel and the resulting injuries.

100. The Subject Fire Pit sold by Defendants was also defective and unsafe for foreseeable purposes at the time it left the control of the Defendants in that the Subject Fire Pit's warnings and instructions encouraged the use of bioethanol and/or other pourable liquid alcohol fuels as a fuel source without instructing the consumer to only use fuel sources containing flame arrestors, and without warning the consumer of the danger of a flashback flame jetting event.

101. The Subject Fire Pit sold by Defendants was also defective and unsafe for foreseeable purposes at the time it left the control of the Defendants in that it contained a white wick that absorbs the liquid fuel and conceals and/or hides the flame, such that the fire can continue to burn after it appears to have gone out, causing a reasonable user to believe the fire is extinguished and to refuel the Subject Fire Pit while it is still lit, which creates the very flame jetting hazard that injured the minor Plaintiff, C.D.

102. The Subject Fire Pit sold by Defendants was also defective and unsafe for foreseeable purposes at the time it left the control of the Defendants in that it required the user to

pour liquid fuel into an open container and then ignite the pooled fuel in the same location where it was poured, in violation of ASTM F3363-19, creating the risk of uncontrollable pool fires and of flame jetting when the user refuels the Subject Fire Pit.

103. Prior to the sale of the Subject Fire Pit, the Defendants knew or should have known that fuel containers that lack flame mitigation devices are susceptible to flashback ignitions and flame jetting.

104. The Subject Fuel sold by Defendants, HOUSWISE, AMZ and/or AMZS, was defective and unreasonably dangerous at the time it left the control of the Defendants in that its container had an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting, and in that it was sold with inadequate, insufficient, and/or defective warnings and instructions regarding the risk of flame jetting when pouring the fuel into a tabletop fire pit, including the Subject Fire Pit.

105. The warnings and instructions accompanying the Subject Fuel were inadequate, insufficient, and/or defective in that, among other things, they failed to adequately warn and/or instruct users: (a) what flame jetting is and that it can occur when pouring the Subject Fuel into a tabletop fire pit; (b) that a flame in a tabletop fire pit can be invisible and/or hidden, such that the Subject Fuel can ignite while it is being poured into a fire pit that appears to be extinguished; (c) that the bottle's pour spout and/or flame mitigation device would not prevent flashback and flame jetting; (d) how to safely refuel a tabletop fire pit, including waiting until the fire pit has completely cooled before refueling; and (e) of the risk of serious burn injury or death to users and bystanders from flame jetting.

106. The labeling of the Subject Fuel as a "Patented Safety Pour Bottle," together with its marketing for use with tabletop fire pits, gave users, including the Plaintiffs, a false sense of

security that the Subject Fuel could be safely poured into a tabletop fire pit, when in fact the bottle did not prevent flashback and flame jetting.

107. Prior to the sale of the Subject Fuel, the Defendant, HOUSWISE, knew or should have known of the dangers of flashback and flame jetting when pouring bioethanol fuel into tabletop fire pits, including from ASTM F3363-19 and the CPSC's January 17, 2023 release on flame mitigation devices, and knew or should have known that proper and/or appropriate flame mitigation devices capable of preventing flame jetting were available and feasible.

108. Prior to the sale of the Subject Fire Pit, Defendants, AMZ and/or AMZS, sold bio-ethanol fuel products for use with tabletop fire pits that contain flame arrestors designed to prevent the very injuries sustained by the minor Plaintiff, C.D.

109. Prior to the sale of the Subject Fire Pit, there was a wealth of information available in the public domain about flame mitigation devices, patents for flame mitigation devices from the 1800s, consumer safety articles discussing the need for flame arrestors, the catastrophic burn injuries that result from preventable fire pit flame jetting events, and the relatively inexpensive alternative designs that can prevent injuries such as those suffered by Plaintiff.

110. Prior to providing the Subject Fire Pit to the Plaintiffs, Amazon was aware of Australia's Consumer Good (Decorative Alcohol Fuelled Devices) Safety Standard (5 July 2017) that provides that decorative alcohol fuelled devices (including table top fire pits) supplied after 15 October 2017 in Australia must be supplied with:

a. fuel container that incorporates a flame arrester; or

b. an automatic fuel pump system for the device.

111. Further the Australian Standard requires warnings that include “Filling an alcohol fuelled device while lit has caused severe burns. When refilling only use containers with a flame arrestor.”

112. Prior to providing the Subject Fire Pit to the Plaintiffs, Amazon was aware of Health Canada’s October 9, 2019 information update on flame jetting that provides in part:

> “Health Canada is informing consumers of the serious fire and burn risks associated with flame jetting occurrences that may result from the use of certain containers of pourable alcohol-based fuels and certain firepots that use those fuels. Fire pots (also referred to as fireburners, portable fireplaces, fire bowls, pation burners, flamepots, firelights, or table top fire pits) are portable decorative lighting accents that support open flame burning…Flame jetting incidents often involve multiple victims and, in Canada, have resulted in fatalities and very serious injuries…Do not use pourable fuel containers without a flame arrestor.”

113. Prior to providing the Subject Fire Pit to the Plaintiffs, Amazon was aware of ASTM F3363-19 which applies to the Subject Fire Pit and provides in part: “When pouring flammable liquids from closed neck containers, use flame mitigation devices to reduce the risk of flame jetting.”

114. Prior to providing the Subject Fire Pit to the Plaintiffs, Amazon was aware of the CPSC’s January 17, 2023 release on flame mitigation devices that provides in part:

> Flame mitigation devices, such as flame arrestors, protect against flame jetting and container rupturing. Flame jetting is a phenomenon where an external ignition source- such as an open flame-causes a sudden ignition of fuel within a container and forcefully expels burning vapor and liquid from the mouth of the container, resulting in a blowtorch-like effect…Flame mitigation devices will be required on containers sold pre-filled with liquid

fireplace fuels.

115. Prior to providing the Subject Fire Pit to the Plaintiffs, Amazon was aware of Health Canada's September 28, 2023 information update on Flikfire Fire Pots that provides in part: The portable firepots also do not have the required labelling according to the ASTM F3363-19 Standard Specifications for Unvented Liquid Gel/Fuel Burning Portable Devices. These labelling requirements are necessary to inform consumers about fire or burn hazards, including flame jetting….The lack of appropriate labelling and hazard information could contribute to a flame jetting incident and/or unintentional exposure to the product and lead to serious illness, injury or death.

116. Less than three weeks after the November 29, 2024 Subject Incident, on December 19, 2024, the United States Consumer Product Safety Commission issued an alert warning consumers explaining "Fire pits that require consumers to pour isopropyl (rubbing) alcohol or other liquid fuel into an open container or bowl and then ignite the pooled liquid in the same location it was poured violate the requirements in voluntary safety standard ASTM F3363-19." The alert further states: "Flame jetting, a second hazard, can occur when refilling alcohol or other liquid-burning fire pits if any flame is present." The alert also states:

> "The U.S. Consumer Product Safety Commission (CPSC) is urging consumers not to buy or use fire pits meant to burn pooled alcohol or other liquid fuel. These products are also sold as tabletop fire pits, fire pots, miniature fireplaces, or portable fires for indoor use. **Consumers should immediately stop using and dispose of these products. Sellers should stop selling these products.**
>
> These fire pits are extremely dangerous and have been associated with two deaths and at least 60 injuries since 2019. This CPSC consumer alert follows the agency's recent warning to stop using FLIKRFIRE Tabletop Fireplaces and the recall of Colsen-branded tabletop fire pits.

Fire pits that require consumers to pour isopropyl (rubbing) alcohol or other liquid fuel into an open container or bowl and then ignite the pooled liquid in the same location it was poured violate the requirements in voluntary safety standard ASTM F3363-19. ASTM F3363-19 is designed to prevent pool fires in which flames burn along the surface of pooled or spilled flammable liquids, and flame jetting in which flames erupt from containers of liquid fuel.

Isopropyl (rubbing) alcohol, ethanol/bioethanol, and similar liquid fuels burn with flame temperatures over 1,600°F and can cause third degree burns in less than one second. Igniting a pool of alcohol or other liquid fuel in a fire pit's open container creates an uncontrollable pool fire, which can suddenly produce larger, hotter flames that can spread beyond the fire pit product.

Flame jetting, a second hazard, can occur when refilling alcohol or other liquid-burning fire pits if any flame is present. A small flame in the fire pit can be hard to see and can ignite alcohol or other liquid fuel as it is poured, causing an explosion that propels flames and burning liquid onto the consumer or bystanders. CPSC's flame jetting safety video demonstrates the potential force of flame jetting and the long distances flames and burning liquid can travel.

The hazardous alcohol or other liquid-burning fire pits are sold by many retailers and e-commerce sites. **CPSC urges consumers to immediately stop use and dispose of these alcohol or other liquid-burning fire pits, and for sellers to stop selling them**."

*See* https://www.cpsc.gov/Warnings/2025/Consumer-Alert-Stop-Using-Alcohol-or-Other-Liquid-Burning-Fire-Pits-That-Violate-Voluntary-Standards-and-Present-Flame-Jetting-and-Fire-Hazards-Two-Deaths-and-Dozens-of-Serious-Burn-Injuries-Reported

117. Even after this warning, and despite their knowledge, prior to the Subject Incident, of the Colsen recall and the other safety information described herein, the Defendants, AMZ and/or

AMZS, failed to timely advise purchasers of BRIAN & DANY tabletop fire pits, including the Plaintiffs, of the dangers of the product or to stop using it.

118. Furthermore, upon information and belief, AMZ and/or AMZS were aware of and/or should have been aware of other lawsuits and other consumers who were injured by similar products involving flame jetting, including, but not limited to lawsuits filed against AMZ and/or AMZS.

119. Defendants were either aware of the information listed above or turned a blind eye toward and ignored this important information about the safety of products they sell.

120. With this safety information readily available, Defendants recklessly chose to sell the Subject Fire Pit without a fuel container with a flame mitigation device and without adequate warnings, and further failed to advise the Plaintiffs of the dangers associated with the Subject Fire Pit, despite knowing someone like the minor Plaintiff, C.D., would be catastrophically injured when around someone using the Subject Fire Pit in a foreseeable manner.

**COUNT I**
**[NEGLIGENCE - AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC]**

121. Plaintiffs readopt and reallege Paragraph 1 through 120 as fully as if said Paragraphs were restated herein.

122. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and/or bystanders, including the Plaintiffs, to sell, distribute, and/or supply safe and reasonably designed tabletop fire pits, including the Subject Fire Pit.

123. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general,

including foreseeable users and bystanders, including the Plaintiffs, to sell, distribute, and/or supply fire pits, including the Subject Fire Pit, that were manufactured with reasonable care.

124. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, such as Plaintiff, to warn about the dangers of the Subject Fire Pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Subject Fire Pit.

125. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to inspect, test, review, and/or vet its sellers and/or manufacturers, including, but not limited to, BRIAN & DANY, in such a manner and with the exercise of reasonable care, so as to prevent the foreseeable risk of injury and/or death to users, including the Plaintiffs, before placing and/or distributing the Subject Fire Pit into the stream of commerce.

126. At all times relevant, Defendants, AMZ and/or AMZS, knew, or reasonably should have known, of the Subject Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

127. At all times material hereto, Defendants, AMZ and/or AMZS, knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Subject Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refueled at that time.

128. At all times material hereto, Defendants, AMZ and/or AMZS, knew, or reasonably should have known, that the Subject Fire Pit causes a reasonable user to be unaware that the fire

is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

129. At all times material hereto, Defendants, AMZ and/or AMZS knew, or reasonably should have known, of the dangers of refuelling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

130. At all times relevant, Defendants, AMZ and/or AMZS knew, or reasonably should have known, that one or more of its recommended use of Bio-Ethanol fuels are typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users. Despite this knowledge, Defendants did nothing to alter the design of its tabletop fire pits, including the Subject Fire Pit, to make them safer to users and bystanders, including Plaintiff, and in fact recommended using Bio-Ethanol alcohol as fuel, despite that most Bio-Ethanol alcohol containers do not have a flame arrestor. Defendants knew, or reasonably should have known that their Subject Fire Pit should have, at a minimum, been sold with a flame arrestor particularly in light of the recommendation to utilize Bio-Ethanol alcohol as a refuelling source.

131. At all times relevant, Defendants knew, or reasonably should have known, that the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and bystanders, including Plaintiff.

132. At all times material hereto, Defendants, AMZ and/or AMZS, negligently designed, manufactured, sold, distributed, and/or supplied the Subject Fire Pit and/or the Subject Fuel, thereby breaching its duties to the public and introducing a defective product into the stream

of commerce that ultimately injured the minor Plaintiff, C.D., in one or more of the following ways:

a. Negligently failing to use the reasonable care a reasonable designer, manufacturer, seller, distributor, and/or supplier would use when designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit;

b. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with an unsafe combustion source;

c. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without safety features to prevent against flame-jetting or explosions during re-fuelling;

d. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with a white wick which absorbs the liquid fuel and conceals and/or hides the flames, and thereby causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions;

e. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit that is prone to cracking, allowing flames to dangerously escape the Subject Fire Pit;

f. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit intended to be used with Bio-Ethanol fuel;

g. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit to be used with alcohol that is sold without flame arrestors or other defensive mechanisms that prevent flame-jetting;

h. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with manufacturing defects;

i. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a flame arrestor or a refuelling canister that contained a flame arrestor;

j. Failing to ensure the Subject Fire Pit included safety devices present on other products they sell;

k. Failing to properly vet BRIAN & DANY and its products prior to listing them for sale, including the Subject Fire Pit;

l. Failing to properly review and vet the warnings and instructions included with the Subject Fire Pit prior to selling, distributing and/or placing into the stream of commerce;

m. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with subpar material that is prone to cracking or leaking;

n. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a proper and appropriate safety inspection or testing;

o. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit which prevented the Plaintiffs from seeing, knowing and/or appreciating that the fire and/or flames had not been completely extinguished;

p. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warning that only fuel in containers with flame arrestors should be used with the Subject Fire Pit;

q. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit in violation of ASTM F3363-19;

r. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warnings indicating that it is hard or impossible to see or determine if a flame is fully extinguished;

s. Negligently failing to advise the Plaintiffs that the Subject Fire Pit is dangerous, unsafe and/or may cause severe injury or death due to flame-jetting;

t. Negligently failing to warn of the foreseeable risks of harm from the Subject Fire Pit of the increased risk of flame-jetting when refuelling the Subject Fire Pit;

u. Negligently failing to warn and/or describe one or more of the following:

   i. What flame-jetting is;

   ii. That flame-jetting can cause serious burns and even death to those in the vicinity of the Subject Fire Pit;

   iii. How flame-jetting can occur when refuelling the Subject Fire Pit;

   iv. Warning that the Bio-Ethanol fuel, can produce an invisible flame, making it difficult to determine when a fire is extinguished, and is most often sold in containers without a flame arrestor;

   v. The need to utilize a flame arrestor on any canister containing fuel, including specifically Bio-Ethanol fuel; and

   vi. That the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and/or bystanders;

v. Negligently selling, distributing, and/or supplying the Subject Fuel in a container with an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting;

w. Negligently selling, distributing, and/or supplying the Subject Fuel for use with tabletop fire pits, including the Subject Fire Pit, with inadequate, insufficient, and/or defective warnings and/or instructions regarding the risk of flame jetting when pouring the Subject Fuel into a tabletop fire pit;

x. Negligently failing to ensure that the Subject Fuel was sold with a proper and/or appropriate flame arrestor or other flame mitigation device, a safety device present on other bioethanol fuel products they sell;

y. Negligently selling, distributing, and/or supplying the Subject Fuel with labeling and marketing, including "Patented Safety Pour Bottle" and its marketing for use with tabletop fire pits, that gave users a false sense of security that the Subject Fuel could be safely poured into a tabletop fire pit.

133. In addition, although Defendants, AMZ and/or AMZS knew, or reasonably should have known, at the time of production that its tabletop fire pits, including the Subject Fire Pit, have an unreasonably dangerous risk of flame-jetting and cracking causing serious injury, Defendants failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, inspection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes of individuals who use its tabletop fire pits, including the Subject Fire Pit.

134. At all times material hereto, the Subject Fire Pit was defective because it was unreasonably and defectively dangerous at the time the product left Defendants' control due to inadequate warnings, labelling, and/or instructions accompanying the Subject Fire Pit.

135. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fuel, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to sell, distribute, and/or supply reasonably safe bioethanol fuel products, including the Subject Fuel, and to warn of the dangers of those products.

136. At all times material hereto, the Defendants, AMZ and/or AMZS, negligently sold, distributed, and/or supplied the Subject Fuel, which was defective and unreasonably dangerous because its container had an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting, and because it was sold with inadequate, insufficient, and/or defective warnings and/or instructions regarding the risk of flame jetting when pouring the fuel into a tabletop fire pit, including the Subject Fire Pit. Defendants, AMZ and/or AMZS, knew, or reasonably should have known, that the Subject Fuel was marketed and sold for use with tabletop fire pits, and that users refuel tabletop fire pits when the fire may not be completely extinguished.

137. At all times material hereto, the Plaintiffs, JAMIE DAVIS and MICHAEL DAVIS, used the Subject Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

138. At all times material hereto, the Subject Fire Pit that was sold, distributed, delivered, received, and/or used by the Plaintiffs, was in same condition and substantially unaltered from the time it left the control of the Defendants, AMZ and/or AMZS.

139. As a direct and proximate result of the negligence of the Defendants, AMZ and/or AMZS, the minor Plaintiff, C.D., was injured in and about her body, head, face and/or extremities, and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, scarring, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, incurred and will incur medical, nursing, attendant care and life care expenses for her care and treatment, and lost the ability to earn money in the future; said injuries are either permanent or continuing in their nature and the minor Plaintiff, C.D., will suffer such losses and impairments in the future.

140. As a direct and proximate result of the negligence of the Defendants, AMZ and/or AMZS, the Plaintiff, JAMIE DAVIS, as the mother of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of her child; and has sustained damage to her home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, JAMIE DAVIS, will suffer such losses in the future.

141. As a direct and proximate result of the negligence of the Defendants, AMZ and/or AMZS, the Plaintiff, MICHAEL DAVIS, as the father of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of his child;

and has sustained damage to his home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, MICHAEL DAVIS, will suffer such losses in the future.

**WHEREFORE**, Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, demand judgment against Defendants, AMAZON.COM, INC. and AMAZON.COM SERVICES, LLC, for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

**COUNT II**
**[STRICT LIABILITY - AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC]**

142. Plaintiffs readopt and reallege Paragraph 1 through 120 as fully as if said Paragraphs were restated herein.

143. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and/or bystanders, including the Plaintiffs, to sell, distribute, and/or supply safe and reasonably designed tabletop fire pits, including the Subject Fire Pit.

144. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders, including the Plaintiffs, to sell, distribute, and/or supply fire pits, including the Subject Fire Pit, that were manufactured with reasonable care.

145. At all times material hereto, the Defendants, AMZ and/or AMZS, as the seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, such as Plaintiff, to warn about the dangers of the Subject Fire Pit, because Defendant either knew,

or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Subject Fire Pit.

146. At all times relevant, Defendants, AMZ and/or AMZS, knew, or reasonably should have known, of the Subject Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

147. At all times material hereto, Defendants, AMZ and/or AMZS, knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Subject Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refueled at that time.

148. At all times material hereto, Defendants, AMZ and/or AMZS, knew, or reasonably should have known, that the Subject Fire Pit causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

149. At all times material hereto, Defendants, AMZ and/or AMZS knew, or reasonably should have known, of the dangers of refuelling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

150. At all times relevant, Defendants, AMZ and/or AMZS knew, or reasonably should have known, that one or more of its recommended use of Bio-Ethanol fuels are typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users. Despite this knowledge, Defendants did nothing to alter the design of its tabletop fire pits, including the Subject Fire Pit, to make them safer to users and bystanders, including Plaintiff, and in fact recommended using Bio-Ethanol

alcohol as fuel, despite that most Bio-Ethanol alcohol containers do not have a flame arrestor. Defendants knew, or reasonably should have known that their Subject Fire Pit should have, at a minimum, been sold with a flame arrestor particularly in light of the recommendation to utilize Bio-Ethanol alcohol as a refuelling source.

151. At all times relevant, Defendants knew, or reasonably should have known, that the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and bystanders, including Plaintiff.

152. At all times material hereto, Defendants, AMZ and/or AMZS, designed, manufactured, sold, distributed, and/or supplied the Subject Fire Pit and/or the Subject Fuel, thereby breaching its duties to the public and introducing a defective product into the stream of commerce that ultimately injured the minor Plaintiff, C.D., in one or more of the following ways:

a. Designing, manufacturing, selling, distributing, and/or supplying a defective Subject Fire Pit;

b. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with an unsafe combustion source;

c. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without safety features to prevent against flame-jetting or explosions during re-fuelling;

d. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with a white wick which absorbs the liquid fuel and conceals and/or hides the flames, and thereby causes a reasonable user to be unaware that the fire is still

burning and increases the risk that a reasonable user will re-fuel in unsafe conditions;

e. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit that is prone to cracking, allowing flames to dangerously escape the Subject Fire Pit;

f. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit intended to be used with Bio-Ethanol fuel;

g. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit to be used with alcohol that is sold without flame arrestors or other defensive mechanisms that prevent flame-jetting;

h. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with manufacturing defects;

i. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a flame arrestor or a refuelling canister that contained a flame arrestor;

j. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without proper and appropriate safety devices, which are present on other products they sell;

k. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with subpar material that is prone to cracking or leaking;

l. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a proper and appropriate safety inspection or testing;

m. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit which prevented the Plaintiffs from seeing, knowing and/or appreciating that the fire and/or flames had not been completely extinguished;

n. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit in violation of ASTM F3363-19;

o. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warning that only fuel in containers with flame arrestors should be used with the Subject Fire Pit;

p. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warnings indicating that it is hard or impossible to see or determine if a flame is fully extinguished;

q. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without warnings advising the Plaintiffs that the Subject Fire Pit is dangerous, unsafe and/or may cause severe injury or death due to flame-jetting;

r. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without warning of the foreseeable risks of harm from the Subject Fire Pit of the increased risk of flame-jetting when refuelling the Subject Fire Pit;

s. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without warnings regarding one or more of the following:

    i. What flame-jetting is;

ii. That flame-jetting can cause serious burns and even death to those in the vicinity of the Subject Fire Pit;

iii. How flame-jetting can occur when refuelling the Subject Fire Pit;

iv. Warning that the Bio-Ethanol fuel, can produce an invisible flame, making it difficult to determine when a fire is extinguished, and is most often sold in containers without a flame arrestor;

v. The need to utilize a flame arrestor on any canister containing fuel, including specifically Bio-Ethanol fuel; and

vi. That the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and/or bystanders;

t. Selling, distributing, and/or supplying the Subject Fuel in a container with an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting;

u. Selling, distributing, and/or supplying the Subject Fuel for use with tabletop fire pits, including the Subject Fire Pit, with inadequate, insufficient, and/or defective warnings and/or instructions regarding the risk of flame jetting when pouring the Subject Fuel into a tabletop fire pit;

v. Selling, distributing, and/or supplying the Subject Fuel without a proper and/or appropriate flame arrestor or other flame mitigation device, a safety device present on other bioethanol fuel products they sell;

w. Selling, distributing, and/or supplying the Subject Fuel with labeling and marketing, including “Patented Safety Pour Bottle” and its marketing for use with

tabletop fire pits, that gave users a false sense of security that the Subject Fuel could be safely poured into a tabletop fire pit.

153. In addition, although Defendants, AMZ and/or AMZS knew, or reasonably should have known, at the time of production that its tabletop fire pits, including the Subject Fire Pit, have an unreasonably dangerous risk of flame-jetting and cracking causing serious injury, Defendants failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, inspection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes of individuals who use its tabletop fire pits, including the Subject Fire Pit.

154. At all times material hereto, the Subject Fire Pit was defective because it was unreasonably and defectively dangerous at the time the product left Defendants' control due to its defective design, manufacturing defects, inadequate warnings, labelling, and/or instructions accompanying the Subject Fire Pit.

155. At all times material hereto, the Defendants, AMZ and/or AMZS, sold, distributed, and/or supplied the Subject Fuel, which was defective and unreasonably dangerous at the time it left the control of the Defendants because its container had an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting, and because it was sold with inadequate, insufficient, and/or defective warnings and/or instructions regarding the risk of flame jetting when pouring the fuel into a tabletop fire pit, including the Subject Fire Pit, and in that the Subject Fuel was marketed and labeled for use with tabletop fire pits, including as a "Patented Safety Pour Bottle," giving users a false sense of security.

156. At all times material hereto, the Subject Fuel was used in its intended manner and for its intended purpose, and was in the same condition and substantially unaltered from the time it left the control of the Defendants, AMZ and/or AMZS.

157. At all times material hereto, the Plaintiffs, JAMIE DAVIS and MICHAEL DAVIS, used the Subject Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

158. At all times material hereto, the Subject Fire Pit that was sold, distributed, delivered, received, and/or used by the Plaintiffs, was in same condition and substantially unaltered from the time it left the control of the Defendants, AMZ and/or AMZS.

159. As a direct and proximate result of the strict liability of the Defendants, AMZ and/or AMZS, the minor Plaintiff, C.D., was injured in and about her body, head, face and/or extremities, and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, scarring, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, incurred and will incur medical, nursing, attendant care and life care expenses for her care and treatment, and lost the ability to earn money in the future; said injuries are either permanent or continuing in their nature and the minor Plaintiff, C.D., will suffer such losses and impairments in the future.

160. As a direct and proximate result of the strict liability of the Defendants, AMZ and/or AMZS, the Plaintiff, JAMIE DAVIS, as the mother of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of her child;

and has sustained damage to her home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, JAMIE DAVIS, will suffer such losses in the future.

161. As a direct and proximate result of the strict liability of the Defendants, AMZ and/or AMZS, the Plaintiff, MICHAEL DAVIS, as the father of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of his child; and has sustained damage to his home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, MICHAEL DAVIS, will suffer such losses in the future.

**WHEREFORE**, Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, demand judgment against Defendants, AMAZON.COM, INC. and AMAZON.COM SERVICES, LLC, for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

## COUNT III
## [NEGLIGENCE - BRIAN & DANY]

162. Plaintiffs readopt and reallege Paragraph 1 through 120 as fully as if said Paragraphs were restated herein.

163. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and/or bystanders, including the Plaintiffs, to sell, distribute, and/or supply safe and reasonably designed tabletop fire pits, including the Subject Fire Pit.

164. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders, including the Plaintiffs, to sell, distribute, and/or supply fire pits, including the Subject Fire Pit, that were manufactured with reasonable care.

165. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, such as Plaintiff, to warn about the dangers of the Subject Fire Pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Subject Fire Pit.

166. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to inspect, test, review and/or test its products, including the Subject Fire Pit, in such a manner and with the exercise of reasonable care, so as to prevent the foreseeable risk of injury and/or death to users, including the Plaintiffs, before placing and/or distributing the Subject Fire Pit into the stream of commerce.

167. At all times relevant, Defendant, BRIAN & DANY, knew, or reasonably should have known, of the Subject Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

168. At all times material hereto, Defendant, BRIAN & DANY, knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Subject Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refuelled at that time.

169. At all times material hereto, Defendant, BRIAN & DANY, knew, or reasonably should have known, that the Subject Fire Pit causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

170. At all times material hereto, Defendant, BRIAN & DANY knew, or reasonably should have known, of the dangers of refuelling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

171. At all times relevant, Defendant, BRIAN & DANY, knew, or reasonably should have known, that one or more of its recommended use of Bio-Ethanol fuels are typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users. Despite this knowledge, Defendants did nothing to alter the design of its tabletop fire pits, including the Subject Fire Pit, to make them safer to users and bystanders, including Plaintiff, and in fact recommended using Bio-Ethanol alcohol as fuel, despite that most Bio-Ethanol alcohol containers do not have a flame arrestor. Defendants knew, or reasonably should have known that their Subject Fire Pit should have, at a minimum, been sold with a flame arrestor particularly in light of the recommendation to utilize Bio-Ethanol alcohol as a refuelling source.

172. At all times relevant, Defendant, BRIAN & DANY, knew, or reasonably should have known, that the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and bystanders, including Plaintiff.

173. At all times material hereto, Defendant, BRIAN & DANY, negligently designed, manufactured, sold, distributed, and/or supplied the Subject Fire Pit, thereby breaching its duties to the public and introducing a defective product into the stream of commerce that ultimately injured the minor Plaintiff, C.D., in one or more of the following ways:

a. Negligently failing to use the reasonable care a reasonable designer, manufacturer, seller, distributor, and/or supplier would use when designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit;

b. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with an unsafe combustion source;

c. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without safety features to prevent against flame-jetting or explosions during re-fuelling;

d. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with a white wick which absorbs the liquid fuel and conceals and/or hides the flames, and thereby causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions;

e. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit that is prone to cracking, allowing flames to dangerously escape the Subject Fire Pit;

f. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit intended to be used with Bio-Ethanol fuel;

g. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit to be used with alcohol that is sold without flame arrestors or other defensive mechanisms that prevent flame-jetting;

h. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with manufacturing defects;

i. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a flame arrestor or a refuelling canister that contained a flame arrestor;

j. Failing to ensure the Subject Fire Pit included safety devices present on other products they sell;

k. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with subpar material that is prone to cracking or leaking;

l. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a proper and appropriate safety inspection or testing;

m. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit which prevented the Plaintiffs from seeing, knowing and/or appreciating that the fire and/or flames had not been completely extinguished;

n. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warning that only fuel in containers with flame arrestors should be used with the Subject Fire Pit;

o. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to

reduce or avoid those risks, such as by instructing and/or warnings indicating that it is hard or impossible to see or determine if a flame is fully extinguished;

p. Negligently failing to advise the Plaintiffs that the Subject Fire Pit is dangerous, unsafe and/or may cause severe injury or death due to flame-jetting;

q. Negligently designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit in violation of ASTM F3363-19;

r. Negligently failing to warn of the foreseeable risks of harm from the Subject Fire Pit of the increased risk of flame-jetting when refuelling the Subject Fire Pit;

s. Negligently failing to warn and/or describe one or more of the following:

    i. What flame-jetting is;

    ii. That flame-jetting can cause serious burns and even death to those in the vicinity of the Subject Fire Pit;

    iii. How flame-jetting can occur when refuelling the Subject Fire Pit;

    iv. Warning that the Bio-Ethanol fuel, can produce an invisible flame, making it difficult to determine when a fire is extinguished, and is most often sold in containers without a flame arrestor;

    v. The need to utilize a flame arrestor on any canister containing fuel, including specifically Bio-Ethanol fuel; and

    vi. That the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and/or bystanders.

174. In addition, although Defendant, BRIAN & DANY, knew, or reasonably should have known, at the time of production that its tabletop fire pits, including the Subject Fire Pit, have

an unreasonably dangerous risk of flame-jetting and cracking causing serious injury, Defendants failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, inspection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes of individuals who use its tabletop fire pits, including the Subject Fire Pit.

175. At all times material hereto, the Subject Fire Pit was defective because it was unreasonably and defectively dangerous at the time the product left Defendants' control due to its defective design, manufacturing defects, inadequate warnings, labelling, and/or instructions accompanying the Subject Fire Pit.

176. At all times material hereto, the Plaintiffs, JAMIE DAVIS and MICHAEL DAVIS, used the Subject Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendant.

177. At all times material hereto, the Subject Fire Pit that was sold, distributed, delivered, received, and/or used by the Plaintiffs, was in same condition and substantially unaltered from the time it left the control of the Defendants, BRIAN & DANY.

178. As a direct and proximate result of the negligence of the Defendant, BRIAN & DANY, the minor Plaintiff, C.D., was injured in and about her body, head, face and/or extremities, and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, scarring, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, incurred and will incur medical, nursing, attendant care and life care expenses for her care and treatment, and lost the ability to earn money in the future; said injuries are either permanent or continuing in their nature and the minor Plaintiff, C.D., will suffer such losses and impairments in the future.

179. As a direct and proximate result of the negligence of the Defendant, BRIAN & DANY, the Plaintiff, JAMIE DAVIS, as the mother of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of her child; and has sustained damage to her home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, JAMIE DAVIS, will suffer such losses in the future.

180. As a direct and proximate result of the negligence of the Defendant, BRIAN & DANY, the Plaintiff, MICHAEL DAVIS, as the father of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of his child; and has sustained damage to his home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, MICHAEL DAVIS, will suffer such losses in the future.

**WHEREFORE**, Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, demand judgment against Defendant, LING JUNWEN, d/b/a BACOFLO and d/b/a BRIAN & DANY, for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

**COUNT IV**
**[STRICT LIABILITY - BRIAN & DANY]**

181. Plaintiffs readopt and reallege Paragraph 1 through 120 as fully as if said Paragraphs were restated herein.

182. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and/or bystanders, including the Plaintiffs, to sell, distribute, and/or supply safe and reasonably designed tabletop fire pits, including the Subject Fire Pit.

183. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders, including the Plaintiffs, to sell, distribute, and/or supply fire pits, including the Subject Fire Pit, that were manufactured with reasonable care.

184. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, such as Plaintiff, to warn about the dangers of the Subject Fire Pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Subject Fire Pit.

185. At all times material hereto, the Defendant, BRIAN & DANY, as the designer, manufacturer, seller, distributor, and/or supplier of the Subject Fire Pit, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to inspect, test, review and/or test its products, including the Subject Fire Pit, in such a manner and with the exercise of reasonable care, so as to prevent the foreseeable risk of injury and/or death to users, including the Plaintiffs, before placing and/or distributing the Subject Fire Pit into the stream of commerce.

186. At all times relevant, Defendant, BRIAN & DANY, knew, or reasonably should have known, of the Subject Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

187. At all times material hereto, Defendant, BRIAN & DANY, knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Subject Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refuelled at that time.

188. At all times material hereto, Defendant, BRIAN & DANY, knew, or reasonably should have known, that the Subject Fire Pit causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

189. At all times material hereto, Defendant, BRIAN & DANY knew, or reasonably should have known, of the dangers of refuelling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

190. At all times relevant, Defendant, BRIAN & DANY, knew, or reasonably should have known, that one or more of its recommended use of Bio-Ethanol fuels are typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users. Despite this knowledge, Defendants did nothing to alter the design of its tabletop fire pits, including the Subject Fire Pit, to make them safer to users and bystanders, including Plaintiff, and in fact recommended using Bio-Ethanol alcohol as fuel, despite that most Bio-Ethanol alcohol containers do not have a flame arrestor. Defendants knew, or reasonably should have known that their Subject Fire Pit should have, at a

minimum, been sold with a flame arrestor particularly in light of the recommendation to utilize Bio-Ethanol alcohol as a refuelling source.

191. At all times relevant, Defendant, BRIAN & DANY, knew, or reasonably should have known, that the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and bystanders, including Plaintiff.

192. At all times material hereto, Defendant, BRIAN & DANY, designed, manufactured, sold, distributed, and/or supplied the Subject Fire Pit, thereby breaching its duties to the public and introducing a defective product into the stream of commerce that ultimately injured the minor Plaintiff, C.D., in one or more of the following ways:

a. Designing, manufacturing, selling, distributing, and/or supplying a defective Subject Fire Pit;

b. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with an unsafe combustion source;

c. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without safety features to prevent against flame-jetting or explosions during re-fuelling;

d. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with a white wick which absorbs the liquid fuel and conceals and/or hides the flames, and thereby causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions;

e. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit that is prone to cracking, allowing flames to dangerously escape the Subject Fire Pit;

f. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit intended to be used with Bio-Ethanol fuel;

g. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit to be used with alcohol that is sold without flame arrestors or other defensive mechanisms that prevent flame-jetting;

h. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with manufacturing defects;

i. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a flame arrestor or a refuelling canister that contained a flame arrestor;

j. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without proper and appropriate safety devices, which are present on other products they sell;

k. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit with subpar material that is prone to cracking or leaking;

l. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without a proper and appropriate safety inspection or testing;

m. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit which prevented the Plaintiffs from seeing, knowing and/or appreciating that the fire and/or flames had not been completely extinguished;

n. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warning that only fuel in containers with flame arrestors should be used with the Subject Fire Pit;

o. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without adequate and/or sufficient instructions and/or warnings to reduce or avoid those risks, such as by instructing and/or warnings indicating that it is hard or impossible to see or determine if a flame is fully extinguished;

p. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit in violation of ASTM F3363-19;

q. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without warnings advising the Plaintiffs that the Subject Fire Pit is dangerous, unsafe and/or may cause severe injury or death due to flame-jetting;

r. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without warning of the foreseeable risks of harm from the Subject Fire Pit of the increased risk of flame-jetting when refuelling the Subject Fire Pit;

s. Designing, manufacturing, selling, distributing, and/or supplying the Subject Fire Pit without warnings regarding one or more of the following:

    i. What flame-jetting is;

    ii. That flame-jetting can cause serious burns and even death to those in the vicinity of the Subject Fire Pit;

    iii. How flame-jetting can occur when refuelling the Subject Fire Pit;

iv. Warning that the Bio-Ethanol fuel, can produce an invisible flame, making it difficult to determine when a fire is extinguished, and is most often sold in containers without a flame arrestor;

v. The need to utilize a flame arrestor on any canister containing fuel, including specifically Bio-Ethanol fuel; and

vi. That the Subject Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Subject Fire Pit and risking a widespread fire that could severely injure users and/or bystanders.

193. In addition, although Defendant, BRIAN & DANY, knew, or reasonably should have known, at the time of production that its tabletop fire pits, including the Subject Fire Pit, have an unreasonably dangerous risk of flame-jetting and cracking causing serious injury, Defendant failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, inspection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes of individuals who use its tabletop fire pits, including the Subject Fire Pit.

194. At all times material hereto, the Subject Fire Pit was defective because it was unreasonably and defectively dangerous at the time the product left Defendants' control due to its defective design, manufacturing defects, inadequate warnings, labelling, and/or instructions accompanying the Subject Fire Pit.

195. At all times material hereto, the Plaintiffs, JAMIE DAVIS and MICHAEL DAVIS, used the Subject Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

196. At all times material hereto, the Subject Fire Pit that was sold, distributed, delivered, received, and/or used by the Plaintiffs, was in same condition and substantially unaltered from the time it left the control of the Defendant, BRIAN & DANY.

197. As a direct and proximate result of the strict liability of the Defendant, BRIAN & DANY, the minor Plaintiff, C.D., was injured in and about her body, head, face and/or extremities, and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, scarring, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, incurred and will incur medical, nursing, attendant care and life care expenses for her care and treatment, and lost the ability to earn money in the future; said injuries are either permanent or continuing in their nature and the minor Plaintiff, C.D., will suffer such losses and impairments in the future.

198. As a direct and proximate result of the strict liability of the Defendant, BRIAN & DANY, the Plaintiff, JAMIE DAVIS, as the mother of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of her child; and has sustained damage to her home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, JAMIE DAVIS, will suffer such losses in the future.

199. As a direct and proximate result of the strict liability of the Defendant, BRIAN & DANY, the Plaintiff, MICHAEL DAVIS, as the father of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render

nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of his child; and has sustained damage to his home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, MICHAEL DAVIS, will suffer such losses in the future.

**WHEREFORE**, Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, demand judgment against Defendant, LING JUNWEN, d/b/a BACOFLO and d/b/a BRIAN & DANY, for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

**COUNT V**
**[NEGLIGENCE - HOUSWISE]**

200. Plaintiffs readopt and reallege Paragraph 1 through 120 as fully as if said Paragraphs were restated herein.

201. At all times material hereto, the Defendant, HOUSWISE, as the designer, manufacturer, marketer, seller, distributor, and/or supplier of the Subject Fuel, owed a duty to the consuming public in general, including foreseeable users and/or bystanders, including the Plaintiffs, to design, manufacture, sell, distribute, and/or supply reasonably safe bioethanol fuel products, including the Subject Fuel.

202. At all times material hereto, the Defendant, HOUSWISE, as the designer, manufacturer, marketer, seller, distributor, and/or supplier of the Subject Fuel, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to warn about the dangers of the Subject Fuel, including the danger of flashback and flame jetting when pouring the Subject Fuel into a tabletop fire pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Subject Fuel.

203. At all times material hereto, the Defendant, HOUSWISE, as the designer, manufacturer, marketer, seller, distributor, and/or supplier of the Subject Fuel, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to inspect, test, and/or review its products, including the Subject Fuel and its container, in such a manner and with the exercise of reasonable care, so as to prevent the foreseeable risk of injury and/or death to users and bystanders, including the Plaintiffs, before placing and/or distributing the Subject Fuel into the stream of commerce.

204. At all times material hereto, Defendant, HOUSWISE, knew, or reasonably should have known, that users pour the Subject Fuel into tabletop fire pits to refuel them once it appears the fire has gone out, but when the fire may not be completely extinguished, and that the flame of burning bioethanol fuel can be invisible and/or hidden. This scenario greatly increases the risk of flashback and flame jetting when the Subject Fuel is poured.

205. At all times material hereto, Defendant, HOUSWISE, knew, or reasonably should have known, that the flame arrestor and/or flame mitigation device on the Subject Fuel's container was inadequate and/or insufficient to prevent flashback and flame jetting, and that proper and/or appropriate flame mitigation devices capable of preventing flame jetting were available and feasible.

206. At all times material hereto, Defendant, HOUSWISE, negligently designed, manufactured, marketed, sold, distributed, and/or supplied the Subject Fuel, thereby breaching its duties to the public and introducing a defective product into the stream of commerce that ultimately injured the minor Plaintiff, C.D., in one or more of the following ways:

a. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying a defective Subject Fuel;

b. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel in a container with an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting;

c. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without a proper and/or appropriate flame arrestor or other flame mitigation device capable of preventing flashback and flame jetting;

d. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel for use with tabletop fire pits, including the Subject Fire Pit, despite the known risk of flame jetting when the Subject Fuel is poured into a tabletop fire pit;

e. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel labeled as a "Patented Safety Pour Bottle," giving users a false sense of security that the Subject Fuel could be safely poured into a tabletop fire pit;

f. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without adequate and/or sufficient warnings regarding what flame jetting is and that it can occur when pouring the Subject Fuel into a tabletop fire pit;

g. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without adequate and/or sufficient warnings that the flame in a tabletop fire pit can be invisible and/or hidden, such that the Subject Fuel can ignite while being poured into a fire pit that appears to be extinguished;

h. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without adequate and/or sufficient instructions on how to safely refuel a tabletop fire pit;

i. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel with inadequate, insufficient, improper, and/or defective warnings, labeling, and/or instructions;

j. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without warnings advising the Plaintiffs that pouring the Subject Fuel into a tabletop fire pit is dangerous, unsafe and/or may cause severe injury or death due to flame jetting; and

k. Negligently designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without a proper and appropriate safety inspection or testing.

207. At all times material hereto, the Subject Fuel was defective because it was unreasonably and defectively dangerous at the time the product left Defendant's control due to its defective design, its inadequate and/or insufficient flame arrestor and/or flame mitigation device, and its inadequate, insufficient, and/or defective warnings, labeling, and/or instructions.

208. At all times material hereto, the Plaintiff, MICHAEL DAVIS, used the Subject Fuel in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendant.

209. At all times material hereto, the Subject Fuel that was sold, distributed, delivered, received, and/or used by the Plaintiffs, was in the same condition and substantially unaltered from the time it left the control of the Defendant, HOUSWISE.

210. As a direct and proximate result of the negligence of the Defendant, HOUSWISE, the minor Plaintiff, C.D., was injured in and about her body, head, face and/or extremities, and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, scarring, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, incurred and will incur medical, nursing, attendant care and life care expenses for her care and treatment, and lost the ability to earn money in the future; said injuries are either permanent or continuing in their nature and the minor Plaintiff, C.D., will suffer such losses and impairments in the future.

211. As a direct and proximate result of the negligence of the Defendant, HOUSWISE, the Plaintiff, JAMIE DAVIS, as the mother of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of her child; and has sustained damage to her home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, JAMIE DAVIS, will suffer such losses in the future.

212. As a direct and proximate result of the negligence of the Defendant, HOUSWISE, the Plaintiff, MICHAEL DAVIS, as the father of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of his child; and has

sustained damage to his home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, MICHAEL DAVIS, will suffer such losses in the future.

**WHEREFORE**, Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, demand judgment against Defendant, FURMIA, LLC d/b/a HOUSWISE, for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

## COUNT VI
## [STRICT LIABILITY - HOUSWISE]

213. Plaintiffs readopt and reallege Paragraph 1 through 120 as fully as if said Paragraphs were restated herein.

214. At all times material hereto, the Defendant, HOUSWISE, as the designer, manufacturer, marketer, seller, distributor, and/or supplier of the Subject Fuel, owed a duty to the consuming public in general, including foreseeable users and/or bystanders, including the Plaintiffs, to design, manufacture, sell, distribute, and/or supply reasonably safe bioethanol fuel products, including the Subject Fuel.

215. At all times material hereto, the Defendant, HOUSWISE, as the designer, manufacturer, marketer, seller, distributor, and/or supplier of the Subject Fuel, owed a duty to foreseeable users and bystanders, including the Plaintiffs, to warn about the dangers of the Subject Fuel, including the danger of flashback and flame jetting when pouring the Subject Fuel into a tabletop fire pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Subject Fuel.

216. At all times material hereto, the Defendant, HOUSWISE, as the designer, manufacturer, marketer, seller, distributor, and/or supplier of the Subject Fuel, owed a duty to

foreseeable users and bystanders, including the Plaintiffs, to inspect, test, and/or review its products, including the Subject Fuel and its container, in such a manner and with the exercise of reasonable care, so as to prevent the foreseeable risk of injury and/or death to users and bystanders, including the Plaintiffs, before placing and/or distributing the Subject Fuel into the stream of commerce.

217. At all times material hereto, Defendant, HOUSWISE, knew, or reasonably should have known, that users pour the Subject Fuel into tabletop fire pits to refuel them once it appears the fire has gone out, but when the fire may not be completely extinguished, and that the flame of burning bioethanol fuel can be invisible and/or hidden. This scenario greatly increases the risk of flashback and flame jetting when the Subject Fuel is poured.

218. At all times material hereto, Defendant, HOUSWISE, knew, or reasonably should have known, that the flame arrestor and/or flame mitigation device on the Subject Fuel's container was inadequate and/or insufficient to prevent flashback and flame jetting, and that proper and/or appropriate flame mitigation devices capable of preventing flame jetting were available and feasible.

219. At all times material hereto, Defendant, HOUSWISE, designed, manufactured, marketed, sold, distributed, and/or supplied the Subject Fuel, thereby introducing a defective and unreasonably dangerous product into the stream of commerce that ultimately injured the minor Plaintiff, C.D., in one or more of the following ways:

a. Designing, manufacturing, marketing, selling, distributing, and/or supplying a defective Subject Fuel;

b. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel in a container with an inadequate and/or insufficient flame arrestor and/or flame mitigation device that failed to prevent flashback and flame jetting;

c. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without a proper and/or appropriate flame arrestor or other flame mitigation device capable of preventing flashback and flame jetting;

d. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel for use with tabletop fire pits, including the Subject Fire Pit, despite the known risk of flame jetting when the Subject Fuel is poured into a tabletop fire pit;

e. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel labeled as a "Patented Safety Pour Bottle," giving users a false sense of security that the Subject Fuel could be safely poured into a tabletop fire pit;

f. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without adequate and/or sufficient warnings regarding what flame jetting is and that it can occur when pouring the Subject Fuel into a tabletop fire pit;

g. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without adequate and/or sufficient warnings that the flame in a tabletop fire pit can be invisible and/or hidden, such that the Subject Fuel can ignite while being poured into a fire pit that appears to be extinguished;

h. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without adequate and/or sufficient instructions on how to safely refuel a tabletop fire pit;

i. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel with inadequate, insufficient, improper, and/or defective warnings, labeling, and/or instructions;

j. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without warnings advising the Plaintiffs that pouring the Subject Fuel into a tabletop fire pit is dangerous, unsafe and/or may cause severe injury or death due to flame jetting; and

k. Designing, manufacturing, marketing, selling, distributing, and/or supplying the Subject Fuel without a proper and appropriate safety inspection or testing.

220. At all times material hereto, the Subject Fuel was defective because it was unreasonably and defectively dangerous at the time the product left Defendant's control due to its defective design, its inadequate and/or insufficient flame arrestor and/or flame mitigation device, and its inadequate, insufficient, and/or defective warnings, labeling, and/or instructions.

221. At all times material hereto, the Plaintiff, MICHAEL DAVIS, used the Subject Fuel in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendant.

222. At all times material hereto, the Subject Fuel that was sold, distributed, delivered, received, and/or used by the Plaintiffs, was in the same condition and substantially unaltered from the time it left the control of the Defendant, HOUSWISE.

223. As a direct and proximate result of the strict liability of the Defendant, HOUSWISE, the minor Plaintiff, C.D., was injured in and about her body, head, face and/or extremities, and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, scarring, mental anguish,

inconvenience, loss of the capacity for the enjoyment of life, physical handicap, incurred and will incur medical, nursing, attendant care and life care expenses for her care and treatment, and lost the ability to earn money in the future; said injuries are either permanent or continuing in their nature and the minor Plaintiff, C.D., will suffer such losses and impairments in the future.

224. As a direct and proximate result of the strict liability of the Defendant, HOUSWISE, the Plaintiff, JAMIE DAVIS, as the mother of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of her child; and has sustained damage to her home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, JAMIE DAVIS, will suffer such losses in the future.

225. As a direct and proximate result of the strict liability of the Defendant, HOUSWISE, the Plaintiff, MICHAEL DAVIS, as the father of the minor Plaintiff, C.D., has incurred in the past and will incur in the future medical, hospital, nursing, attendant care, and other expenses for the care and treatment of C.D. during her minority; has rendered and will continue to render nursing, attendant care, and caregiving services to C.D.; has lost wages and time from work; has lost, and will lose in the future, the services, companionship, society, and affection of his child; and has sustained damage to his home and personal property. Said losses are either permanent or continuing in their nature and the Plaintiff, MICHAEL DAVIS, will suffer such losses in the future.

**WHEREFORE**, Plaintiffs, C.D., a minor, by and through her parents and natural guardians, JAMIE DAVIS and MICHAEL DAVIS, JAMIE DAVIS, individually, and MICHAEL DAVIS, individually, demand judgment against Defendant, FURMIA, LLC d/b/a HOUSWISE,

for damages, together with interest and costs, and further demand a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 16th day of November , 2026,

HALPERN SANTOS & PINKERT, P.A.
150 Alhambra Circle - Suite 1100
Coral Gables, FL 33134
Phone :(305) 445-1111
Fax : (305) 445-1169
Email : ian@hsptrial.com

By:__*s/Ian D. Pinkert*____________
Ian D. Pinkert, ESQUIRE
Florida Bar No.: 84572